# 23-8096

To be argued by:
**MATTHEW B. LARSEN**

---

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

UNITED STATES OF AMERICA,

Appellee,

-against-

JONATHAN DAVILA,

Defendant-Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## BRIEF FOR APPELLANT JONATHAN DAVILA

---

FEDERAL DEFENDERS OF NEW YORK
APPEALS BUREAU
52 Duane Street, 10th Floor
New York, New York 10007
Tel.: (212) 417-8725
Email: Matthew_Larsen@fd.org

---

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ....................................................................1

STATEMENT OF THE CASE ...........................................................................1

QUESTION PRESENTED ..................................................................................1

STATEMENT OF FACTS ...................................................................................2

SUMMARY OF ARGUMENT ...........................................................................3

ARGUMENT ........................................................................................................3

    Davila's Conviction is Unconstitutional ..........................................................3

    A.    Standard of Review ..................................................................................3

    B.    The Conviction is Void Given *Bruen* ........................................4

        1.    The Second Amendment Covers Davila's Conduct .......5

        2.    The Government Cannot Meet its Burden of Proving § 922(g)(1) is Constitutional Here ...................................7

CONCLUSION .....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Atkinson v. Garland,*
  70 F.4th 1018 (7th Cir. 2023) ............................................. 10, 14

*Coca-Cola Co. v. Koke Co. of America,*
  254 U.S. 143 (1920) ................................................................ 12

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) .................................................................. 5

*Graham v. Florida,*
  560 U.S. 48 (2010) .................................................................. 11

*Kanter v. Barr,*
  919 F.3d 437 (7th Cir. 2019) ............................................. 6-7, 13

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  597 U.S. 1 (2022) ............................................................. *passim*

*Range v. Attorney General,*
  69 F.4th 96 (3d Cir. 2023) (en banc) ............................... *passim*

*United States v. Booker,*
  644 F.3d 12 (1st Cir. 2011) ...................................................... 8

*United States v. Bullock,*
  679 F. Supp. 3d 501 (S.D. Miss. 2023) ........................... 6, 9, 15

*United States v. Daniel,*
  ___ F. Supp. 3d ___, 2023 WL 7325930 (N.D. Ill. Nov. 7, 2023) ......... 13

ii

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*United States v. Daniels*,
   77 F.4th 337 (5th Cir. 2023) ............................................................11-12

*United States v. Harper*,
   ___ F. Supp. 3d ___, 2023 WL 5672311 (M.D. Pa. Sept. 1, 2023) .......12

*United States v. Hostettler*,
   ___ F. Supp. 3d ___, 2024 WL 1548982 (N.D. Ohio Apr. 10, 2024).....11

*United States v. Jimenez-Shilon*,
   34 F.4th 1042 (11th Cir. 2002) ...........................................................6

*United States v. Leblanc*,
   ___ F. Supp. 3d ___,2023 WL 8756694 (M.D. La. Dec. 19, 2023)........14

*United States v. McCray*,
   7 F.4th 40 (2d Cir. 2021) ...................................................................3

*United States v. Miller*,
   307 U.S. 174 (1939) ...........................................................................9

*United States v. Neal*,
   ___ F. Supp. 3d ___,2024 WL 833607 (N.D. Ill. Feb. 7, 2024)............13

*United States v. Quailes*,
   688 F. Supp. 3d 184 (M.D. Pa. 2023)..................................................12

*United States v. Rowson*,
   652 F. Supp. 3d 436 (S.D.N.Y. 2023)...................................................6

*United States v. Skoien*,
   614 F.3d 638 (7th Cir. 2010) (en banc)...............................................13

iii

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

*United States v. Verdugo-Urquidez,*
   494 U.S. 259 (1990) ................................................................ 5

*United States v. Watson,*
   423 U.S. 411 (1976) .............................................................. 10

*United States v. Williams,*
   ___ F. Supp. 3d ___, 2024 WL 731932 (E.D. Mich. Feb. 22, 2024) ...... 14

## Federal Statutes

18 U.S.C. § 922(g)(1) .................................................................. 4

## State Statutes

N.Y. Penal Law § 70.02(3)(a) ..................................................... 13

N.Y. Penal Law § 125.20(1) ........................................................ 13

## Other Authorities

Kopel, David B., *Background Checks for Firearms Sales and Loans:*
   *Law, History, and Policy,*
   53 Harv. J. on Legis. 303 (2016) ............................................ 8

Marshall, C. Kevin, *Why Can't Martha Stewart Have A Gun?,*
   32 Harv. J. L. & Pub. Pol'y 695 (2009) ................................. 10

Wilgus, Horace, *Arrest Without a Warrant,*
   22 Mich. L. Rev. 541 (1924) ................................................ 10

Winkler, Adam, *Heller's Catch-22,*
   56 UCLA L. Rev. 1551 (2009) .............................................. 9

iv

## JURISDICTIONAL STATEMENT

Jonathan Davila appeals a judgment of the United States District Court for the Southern District of New York (Hon. Jed S. Rakoff) rendered on December 18, 2023, and entered two days later. A. 36.[1]

Davila filed a notice of appeal on December 20, 2023. A. 43. The district court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under § 3742(a) and 28 U.S.C. § 1291.

## STATEMENT OF THE CASE

Davila pleaded guilty, without a plea agreement, to possessing a gun in violation of 18 U.S.C. § 922(g)(1). Judge Rakoff sentenced him to 42 months in prison.

## QUESTION PRESENTED

Whether § 922(g)(1) is unconstitutional as applied to Davila in light of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

---

[1] "A." means the Appendix for Appellant Jonathan Davila. "PSR" means his presentence report. "DCD" means the district court docket, S.D.N.Y. No. 23-cr-292, and is followed by the relevant docket entry.

1

## STATEMENT OF FACTS

Responding on April 17, 2023, to a call of a man with a gun, police encountered Davila on a Bronx street.  He fled and eventually fell down, dropping a gun before doing so.  PSR ¶¶ 9-11.

A one-count indictment charged him with violating 18 U.S.C. § 922(g)(1) by possessing the gun after being "convicted in a court of a crime punishable by imprisonment for a term exceeding one year." A. 6.

Davila moved to dismiss, arguing he had a Second Amendment right to possess the gun given the Supreme Court's ruling in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).  *See* DCD 12. Judge Rakoff disagreed.  *See* A. 8.

Davila then pleaded guilty without a plea agreement.  The Probation Office calculated an advisory range of 46-57 months' imprisonment.  PSR ¶ 62.

Judge Rakoff adopted that range, though he said: "I regard the guidelines as wholly irrational and therefore they will play no role in my sentence." A. 22.  "I think a sentence of three and a half years is the least I can possibly give in a case like this; 42 months.  So the defendant is sentenced to 42 months in prison." A. 33.

2

## SUMMARY OF ARGUMENT

Section 922(g)(1) is unconstitutional as applied to Davila in light of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). The "Second Amendment's plain text covers [his] conduct" of possessing a gun on a Bronx street, *id.* at 17, and the government cannot prove a "long, unbroken line of common-law precedent," *id.* at 35, or practice "when the Bill of Rights was adopted in 1791," *id.* at 37, of forever banning someone like Davila from having a gun.

The Court should vacate his conviction.

## ARGUMENT

### Davila's Conviction is Unconstitutional

Davila has a Second Amendment right to possess a gun. His conviction under § 922(g)(1) for doing no more than that should thus be set aside.

### A.    Standard of Review

"We review *de novo* a district court's denial of a motion to dismiss charges in an indictment. *De novo* review similarly applies to . . . challenges to the constitutionality of a statute." *United States v. McCray*, 7 F.4th 40, 45 (2d Cir. 2021) (citations omitted).

### B.    The Conviction is Void Given *Bruen*

Section 922(g)(1) forbids anyone convicted of a "crime punishable by imprisonment for a term exceeding one year" from ever possessing a gun anywhere.  And Davila, previously convicted of such crimes (discussed below), violated § 922(g)(1) by possessing a gun on a Bronx street in April 2023.  PSR ¶¶ 9-11.

In *Bruen*, however, the Court announced a Second Amendment right to carry a gun outside one's home and set forth a new standard for judging the constitutionality of restrictions on firearm possession: "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its regulation, . . . the government must demonstrate that the regulation is consistent with this Nation's historical tradition."  597 U.S. at 17.  Specifically, "the government must affirmatively prove that [a] firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms," *id.* at 19, by pointing to a "long, unbroken line of common-law precedent," *id.* at 35, or practice "when the Bill of Rights was adopted in 1791," *id.* at 37, endorsing the regulation.

Here, the Second Amendment's plain text covers Davila's gun possession, and the government cannot identify a historical tradition, at the time of the Amendment's ratification in 1791, of forever banning people like Davila from having a firearm.

### 1.    The Second Amendment Covers Davila's Conduct

The "Second Amendment's plain text covers," *id.* at 17, the "right of the people to keep and bear Arms."  U.S. Const., Amend. II.  And Davila – a naturalized U.S. citizen, PSR p. 2 – is part of "the people," meaning "'persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community.'"  *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008) (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990)).

Davila's having prior felony convictions doesn't change that.  "[I]n all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset."  *Id.*  Indeed, "the people" appears in the First and Fourth Amendments, both of which cover felons, and there is "no reason to adopt an inconsistent reading of 'the people'" such that

felons have rights under those Amendments but not the Second. *Range v. Attorney General*, 69 F.4th 96, 102 (3d Cir. 2023) (en banc). *See also, e.g., United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2002) (observing that "felons" are "indisputably part of 'the people'"); *United States v. Rowson*, 652 F. Supp. 3d 436, 461 (S.D.N.Y. 2023) (Engelmayer, J.) ("[F]elons have been held to be within the scope of 'the people' whom the Second Amendment covers.").

Tellingly, the government has conceded that the Founders wouldn't have thought felons excluded from "the people." "In 2011, for example, the Department [of Justice] told Judges on the U.S. Court of Appeals for the Fourth Circuit that '[a]s for convicted criminals, Colonial societies do not appear to have categorically prohibited their ownership of firearms.' Similarly, in a case pending before the U.S. Court of Appeals for the First Circuit, the government told the court that 18 U.S.C. § 922(g)(1) is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified.'" *United States v. Bullock*, 679 F. Supp. 3d 501, 534 (S.D. Miss. 2023) (citations omitted).

As then-Judge Barrett also noted about this, the "best historical

6

support for a legislative power to permanently dispossess all felons [of firearms] would be founding-era laws explicitly imposing – or explicitly authorizing the legislature to impose – such a ban.  But at least thus far, scholars have not been able to identify any such laws." *Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019) (Barrett, J., dissenting).

As the en banc Third Circuit has held in agreeing with her, "'all people have the right to keep and bear arms,' though the legislature may constitutionally 'strip certain groups of that right.'" *Range*, 69 F.4th at 102 (quoting *Kanter*, 919 F.3d at 452 (Barrett, J., dissenting)). "[W]e reject the Government's contention that only 'law-abiding, responsible citizens' are counted among 'the people' protected by the Second Amendment." *Id.* at 103 (citations omitted).

Davila is one of "the people" the Second Amendment covers despite his felony convictions.  The question is thus whether he's in one of the "certain groups," *id.* at 102, Congress can constitutionally disarm.

## 2. The Government Cannot Meet its Burden of Proving § 922(g)(1) is Constitutional Here

The "government must affirmatively prove," *Bruen*, 597 U.S. at 19, that § 922(g)(1)'s banning Davila from having a gun is supported by a "long, unbroken line of common-law precedent," *id.* at 35, or practice

"when the Bill of Rights was adopted in 1791." *Id.* at 37. The government cannot make this showing.

In 1791, the conduct that led to Davila's felony convictions – which in turn subjected him to § 922(g)(1) – would not have resulted in a lifetime ban on possessing a firearm.

***First***, Davila has a prior conviction for "Criminal Possession of a Weapon 2°: Loaded Firearm." PSR ¶ 31.

In 1791, however, there was no "long, unbroken line of common-law precedent," *Bruen,* 597 U.S. at 35, or practice of criminalizing gun possession— let alone criminalizing gun possession *based on* prior possession, as § 922(g)(1) does. "Until the early twentieth century, there were no laws that required that individuals receive government permission before purchasing or borrowing a firearm." David B. Kopel, *Background Checks for Firearms Sales and Loans: Law, History, and Policy*, 53 Harv. J. on Legis. 303, 336 (2016). The "federal felony firearm disqualification law, 18 U.S.C. § 922(g)(1), is firmly rooted in the twentieth century." *United States v. Booker*, 644 F.3d 12, 23-24 (1st Cir. 2011).

In fact, in 1791 New York *required* people like Davila to have a

8

gun for service in the militia. "By an Act passed April 4, 1786," the "New York Legislature directed: 'That every able-bodied Male Person, being a Citizen of this State, . . . and who are of the Age of Sixteen, and under the Age of Forty-five Years, shall . . . provide himself, at his own Expense, with a good Musket or Firelock.'" *United States v. Miller*, 307 U.S. 174, 180-81 (1939) (citation omitted).

Section 922(g)(1)'s banning Davila from having a gun – because he once did in violation of New York law – is something "'our ancestors would never have accepted.'" *Bruen*, 597 U.S. at 30 (citation omitted).

**_Second_**, Davila has three assault convictions for getting into fights with people. PSR ¶¶ 29, 32, 36.

In 1791, however, there was no longstanding tradition of imposing a lifelong firearms ban on someone guilty of injuring another person in a fight. As the Department of Justice conceded in 2011 regarding "'convicted criminals'" generally, "'Colonial societies do not appear to have categorically prohibited their ownership of firearms.'" *Bullock*, 679 F. Supp. 3d at 534 (citation omitted). Indeed, the "Founding generation had no laws limiting gun possession by . . . people convicted of crimes." Adam Winkler, *Heller's Catch-22*, 56 UCLA L. Rev. 1551,

1563 (2009). "[B]ans on convicts possessing firearms were unknown before World War I." C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 Harv. J. L. & Pub. Pol'y 695, 708 (2009). Before then, "a felon could 'repurchase arms' after successfully completing his sentence." *Range*, 69 F.4th at 105 (citation omitted).

Further, at "'common law an assault was a misdemeanor,'" not a felony, "'and it was still only such even if made with the intent to rob, murder, or rape.'" *United States v. Watson*, 423 U.S. 411, 440 (1976) (Marshall, J., dissenting; quoting Horace Wilgus, *Arrest Without a Warrant*, 22 Mich. L. Rev. 541, 572-73 (1924)).

Further still, the conduct that led to Davila's assault convictions is not new: people have been getting into fights for centuries. And when a "'challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment.' So too if the Founders used 'materially different means' to address the same problem." *Atkinson v. Garland*, 70 F.4th 1018, 1020-21 (7th Cir. 2023) (quoting *Bruen*, 597 U.S. at 26). That describes this case.

10

Fights are a "problem that has persisted since [and before] the 18th century," *Bruen*, 597 U.S. at 26, but no "historical regulation" existed in 1791 that forever disarmed one person for injuring another during a brawl. *Id.* The "Founders used 'materially different means,'" *id.*, to punish conduct like Davila's: "fines, whipping, or public 'shaming.'" *Graham v. Florida*, 560 U.S. 48, 100 (2010) (Thomas, J., dissenting; citation omitted). "[I]ncarceration w[as] not common," *id.*, and a lifetime ban on possessing a gun, owing to getting into a fight, simply wasn't a punishment.

As applied here, § 922(g)(1) is thus "inconsistent with the Second Amendment." *Bruen*, 597 U.S. at 26. *See also, e.g., United States v. Hostettler*, ___ F. Supp. 3d ___, 2024 WL 1548982, at *2 (N.D. Ohio Apr. 10, 2024) (dismissing § 922(g)(1) indictment against defendant with six felony convictions and "more than twenty-five misdemeanor convictions" for "assault, various drug offenses, disorderly conduct, domestic violence, and operating a vehicle while under the influence").

**_Third_**, Davila has a conviction for selling "1/2 o[unce] or More" of cocaine. PSR ¶ 35.

But the Founders "were not familiar with . . . the modern drug

11

trade." *United States v. Daniels*, 77 F.4th 337, 343 (5th Cir. 2023).

Indeed, "'drugs were not familiar products early in the 19th century,'"

and Americans only "'gradually realized the social effects of narcotics in

the late 1800s and began regulating them at the turn of the century.'"

*Id.* at 344 n.7 (citations omitted). Cocaine, moreover, was not only not

illegal to sell: it was for a time an ingredient in a very popular beverage.

*See Coca-Cola Co. v. Koke Co. of America*, 254 U.S. 143, 145 (1920)

("Before 1900 the beginning of [Coca-Cola's] good will was more or less

helped by the presence of cocaine.") (Holmes, J., for the Court).

There is thus no basis to conclude that selling drugs in 1791 would

have resulted in a lifetime ban on gun possession. *See also, e.g., United

States v. Harper*, ___ F. Supp. 3d ___, 2023 WL 5672311, at *12 (M.D.

Pa. Sept. 1, 2023) (dismissing § 922(g)(1) indictment where

"Government ma[de] no effort to identify a historical analogue that

involves the criminalization of firearm possession for those convicted of

drug trafficking offenses"); *United States v. Quailes*, 688 F. Supp. 3d

184, 188 (M.D. Pa. 2023) (dismissing § 922(g)(1) indictment against

defendant with prior convictions for "possession with intent to

distribute heroin and cocaine").

12

***Finally***, in 2018 Davila got into a fight with other teenage boys and stabbed one of them, who later died; Davila pleaded guilty to "Manslaughter 1°" and was sentenced to five years in prison.  PSR ¶ 33.

But as "acknowledged in *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc), the first federal statute disqualifying certain violent felons from firearm possession was not enacted until the Federal Firearms Act in 1938, which was 147 years after the ratification of the Second Amendment."  *United States v. Daniel*, ___ F. Supp. 3d ___, 2023 WL 7325930, at *5 (N.D. Ill. Nov. 7, 2023).

The death penalty existed in 1791 (and the dead enjoy no rights), but "'capital punishment in the colonies was used sparingly'" and felons not executed "could 'repurchase arms' after they discharged their sentence."  *United States v. Neal*, ___ F. Supp. 3d ___, 2024 WL 833607, at *11 (N.D. Ill. Feb. 7, 2024) (quoting, respectively, *Kanter*, 919 F.3d at 459 (Barrett, J., dissenting), and *Range*, 69 F.4th at 105).  Though Davila took a life, there's no sign he would have been executed.  His crime involved the intent to inflict "injury," not to kill, N.Y. Penal Law § 125.20(1), he committed it as a teenager, and he received the lowest sentence the law allowed: 5 years in prison.  *See id.*, § 70.02(3)(a).

13

Even the crime of murder has been held insufficient under *Bruen* to forever ban someone from having a gun. *See United States v. Williams*, ___ F. Supp. 3d ___, 2024 WL 731932, at *1 n.2 (E.D. Mich. Feb. 22, 2024) (dismissing § 922(g)(1) indictment against defendant with previous "convictions for first and second-degree murder"). So has another crime one might think permits revocation of the right to a gun: "armed robbery." *United States v. Leblanc*, ___ F. Supp. 3d ___, 2023 WL 8756694, at *1 (M.D. La. Dec. 19, 2023).

But *Bruen* upended Second Amendment law. "No longer, the Supreme Court made clear, can lower courts balance interests – of an individual's right to possess a firearm and the state's commitment to promoting personal or public safety – to resolve the constitutionality of the challenged restriction. The new approach anchors itself exclusively in the Second Amendment's text and the pertinent history of firearms regulation, with the government bearing the burden of 'affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Atkinson*, 70 F.4th at 1019 (quoting *Bruen*, 597 U.S. at 19). This is an "exacting," *id.* at 1021, and "demanding standard." *Id.* at 1022.

14

And the government can't meet it here: none of Davila's prior convictions – including the one for manslaughter – would have resulted in 1791 in a lifetime ban on firearm possession. *See also, e.g., Bullock*, 679 F. Supp. 3d at 506 (dismissing § 922(g)(1) charge against man who previously "got into a deadly 'bar fight'" and was "convicted of aggravated assault and manslaughter").

"Because the Government has not shown that our Republic has a longstanding history and tradition of depriving people like [Davila] of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." *Range*, 69 F.4th at 106.

## CONCLUSION

The Court should vacate Davila's conviction.


Respectfully submitted,

FEDERAL DEFENDERS OF NEW YORK
APPEALS BUREAU

June 10, 2024          *s/ Matthew B. Larsen*
                       MATTHEW B. LARSEN
                       Assistant Federal Defender
                       52 Duane Street, 10th Floor
                       New York, NY 10007
                       Tel.: (212) 417-8725
                       Email: Matthew_Larsen@fd.org

15

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with Federal Rule of Appellate Procedure 32(a) in that it consists of 2,877 words set in Century Schoolbook 14-point type.


June 10, 2024                    *<u>s/ Matthew B. Larsen</u>*
                                 MATTHEW B. LARSEN

## **CERTIFICATE OF SERVICE**

I certify that on June 10, 2024, I filed the foregoing brief with the Clerk of the United States Court of Appeals for the Second Circuit by means of the CM/ACMS system.  I further certify that counsel for appellee, Assistant United States Attorney Danielle Sassoon, is a registered user of the CM/ACMS system and that service was accomplished through that system.

June 10, 2024                   *s/ Matthew B. Larsen*
                                MATTHEW B. LARSEN